THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY SHAFFSTALL, | CASE NO. C18-1656-JCC |
| Plaintiff, | ORDER |
| v. | |
| OLD DOMINION FREIGHT LINE, INC., | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion to compel (Dkt. No. 15). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

**I.  BACKGROUND**

Plaintiff Kelly Shaffstall was an employee of Priority Freight Lines when it was purchased by Defendant Old Dominion Freight Line, Inc. in April 2007. (Dkt. No. 1-1 at 2.) Plaintiff was initially employed as a technician, a role in which he was responsible for repairing heavy equipment, such as trucks, trailers, and forklifts. (*Id.* at 3.) During this time, Plaintiff reported to Maintenance Manager Bruce Landry, and Mr. Landry reported to Pacific Northwest Regional Manager Don Orlowski. (*Id.*) Plaintiff asserts that shortly after Defendant purchased Priority Freight Lines, Mr. Landry told him that Defendant prohibited working overtime. (*Id.*)

In July 2008, Plaintiff was promoted to Maintenance Manager, a role in which he was

responsible for supervising technicians and performing administrative functions, such as maintaining employee time records. (*Id.* at 4.) After he was promoted, Plaintiff contends that Mr. Orlowski told him that Defendant strictly prohibited employees from working overtime. (*Id.*) Plaintiff also says that Mr. Orlowski instructed him about appropriate procedures to use to ensure that employees did not work over 40 hours in a week. (*Id.*) One such procedure was changing employee clock-in and clock-out times if the employee inaccurately clocked in before they actually began working. (*Id.*)

In April 2016, Plaintiff was diagnosed with cancer. (*Id.* at 5.) In July 2017, Plaintiff had surgery to remove tumors on his stomach and liver. (*Id.*) Plaintiff told Mr. Orlowski about the upcoming surgery two months before it was scheduled to occur. (*Id.*) Plaintiff contends that, because he feared Defendant would retaliate against him if he applied for leave under the Washington Family and Medical Leave Act ("WFMLA"), he used vacation time for his surgery. (*Id.*) During his time off, Plaintiff still performed some administrative functions of his job. (*Id.*)

In December 2017, Mr. Orlowski died suddenly and was replaced by former Maintenance Manager Lorrin Wallace. (*Id.*) In January 2018, Plaintiff gave Mr. Wallace notice that he would have another cancer treatment surgery in March 2018. (*Id.*) Plaintiff reports that after he gave Mr. Wallace this notice, Mr. Wallace began to "take issue with Plaintiff for no apparent reason." (*Id.*) For example, Plaintiff contends that even though Plaintiff had no control over the return of trucks, Mr. Wallace threatened that he would demote or terminate Plaintiff if the trucks did not return sooner. (*Id.*) Additionally, Mr. Wallace criticized Plaintiff's appearance by telling him: "I can't tell you how to cut your hair, but I want managers to look professional." (*Id.* at 5–6.)

Again out of fear of retaliation if he applied for leave under the WFMLA, Plaintiff used vacation time and sick leave for his March 2018 surgery. (*Id.* at 6.) His surgery was on March 29, and he returned to work on April 12. (*Id.*) Plaintiff worked on Friday, April 13, but he had to work from home on Monday, April 16 because of a fever. (*Id.*) On April 17, Plaintiff was at work when Mr. Wallace came into Plaintiff's office with Regional Human Resources Manager

Tom Lillywhite on speakerphone. (*Id.*) Mr. Lillywhite asked Plaintiff if he had been changing employee clock punch times, and Plaintiff responded that he had to ensure that the clock times reflected actual hours worked. (*Id.*) Mr. Lillywhite responded that changing the clock times was illegal, and that Plaintiff was terminated. (*Id.*) Plaintiff believes that he was actually terminated because of Defendant's discrimination against him based on his disability. (*Id.* at 1.)

Plaintiff brought this lawsuit, alleging violation of Washington's Law Against Discrimination ("WLAD"), wrongful discharge in violation of public policy, and violation of the WFMLA. (*Id.* at 7–8.) During discovery, Plaintiff sought responses to various requests for production and interrogatories. (*See* Dkt. No. 15.) Plaintiff alleges that Defendant failed to produce documents and answer interrogatories sufficiently, which is the subject of the instant motion to compel. (*Id.*)

## II. DISCUSSION

### A. Motion to Compel

Discovery motions are strongly disfavored. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In addressing the proportionality of discovery, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The Court has broad discretion to decide whether to compel discovery. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

If a requested disclosure is not made, the requesting party may move for an order compelling such disclosure. Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Comput. Tech., Inc. v. Lockheed Saunders,*

*Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997). This burden is a heavy one in employment discrimination lawsuits, where discovery rules are construed liberally so as to provide the plaintiff with "broad access to the employers' records." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 643 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.

Plaintiff seeks a fuller response to various requests for production and interrogatories included in Defendant's first and second sets of discovery responses. (*See* Dkt. No. 15.) In the first set, Plaintiff seeks a full response to Requests for Production 5 and 8, which seek documents related to the investigation into and reasons for Plaintiff's termination ("First Discovery Set Dispute"). In the second set, Plaintiff seeks a full response to Interrogatories 1 and 2 and Requests for Production 1–3, which seek information about employees not paid because of Plaintiff's alleged time card fraud ("Second Discovery Set Dispute").

*1. First Discovery Set Dispute*

Requests for Production 5 and 8 ask Defendant to produce documents related to the investigation into and the reasons for Plaintiff's termination. (Dkt. No. 15 at 5–9.) Plaintiff believes that Mr. Wallace used a "Wallace Report" in his decision to terminate Plaintiff, and wants the Court to compel Defendant to produce the Wallace Report and specific instances of time card fraud that Defendant alleges were the basis of Plaintiff's termination. (*See id.*) Defendant contends that Mr. Wallace looked at a series of different reports in his decision to terminate Plaintiff—the "SM Approval Report," the "Comparison Approval Reports," and the "Live ESI Report." (Dkt. No. 18 at 10–11.) The parties appear to agree that Plaintiff already has access to what Defendant calls the "SM Approval Report" and the "Comparison Approval Reports." (*See* Dkt. No. 22 at 3–6.) It appears that the "Live ESI Report" is the same thing as the "Wallace Report," and even if it is not, Defendant certifies that these are the three reports that Mr. Wallace reviewed when deciding whether to report Plaintiff's behavior, and were the basis for Plaintiff's termination. (*See* Dkt. No. 18.) Therefore, to the extent that Defendant has not

1  produced the "Live ESI Report" to Plaintiff, Plaintiff's motion to compel is GRANTED. If
2  Defendant has produced the "SM Approval Report," the "Comparison Approval Reports," and
3  the "Live ESI Report," Plaintiff's motion is DENIED.

### 2. *Second Discovery Set Dispute*

Interrogatories 1 and 2 and Requests for Production 1–3 ask Defendant for information about the employees that were allegedly denied proper wages because of Plaintiff's time card fraud. (Dkt. No. 15 at 9–10.) After Plaintiff filed his motion to compel, the parties reached an agreement on the issues (*see* Dkt. Nos. 18 at 11, 22 at 2–3), demonstrating that the parties are in a much better position to resolve discovery disputes than the Court. Plaintiff's motion for a full response to Interrogatories 1 and 2 and Requests for Production 1–3 is DENIED as moot.

## B.   **Requests for Attorney Fees**

Both parties ask the Court to award attorney fees on the basis that the other party's conduct merits an award of fees. (*See* Dkt. Nos. 15 at 12–13, 18 at 12.) If a motion to compel discovery is granted in part and denied in part, the Court may award attorney fees. Fed. R. Civ. P. 37(a)(5)(C). The Court finds that attorney fees are not appropriate for either party. Both parties could have taken steps to avoid the present discovery dispute, and, in fact, the parties resolved most of the issues without the Court's involvement. Therefore, the Court ORDERS the parties to engage in good faith meet and confer sessions before filing future discovery motions.

## C.   **Motion to Strike**

Defendant filed a surreply arguing that portions of Plaintiff's reply and supporting declaration should be struck because (1) they raise new arguments and (2) they contain hearsay. (*See* Dkt. No. 27.) The Court did not consider the challenged portions of Plaintiff's reply in reaching the decisions in its order. Defendant's motion to strike is DENIED.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to compel (Dkt. No. 15) is GRANTED in part and DENIED in part. To the extent it has not already produced the "Live ESI Report,"

Defendant is ORDERED to produce the report to Plaintiff within 7 days of the date this order is issued. The parties are ORDERED to meet and confer in good faith before filing future discovery motions.

DATED this 13th day of August 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE